## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Cara Macchia,<br><br>                    Plaintiff,<br><br>          -v-<br><br>ADP, Inc.,<br><br>                    Defendant. | 2:21-cv-01502<br>(NJC) (AYS) |

## **MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, District Judge:

This case concerns claims by Plaintiff Cara Macchia ("Plaintiff" or "Macchia") that her former employer, Defendant ADP, Inc. ("Defendant" or "ADP"), subjected her to pregnancy discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). ADP objects to Magistrate Judge Anne Shields' October 17, 2023 electronic order (the "Order") granting Macchia's September 18, 2023 Motion to Strike Defendant's Expert Discovery Production (the "Motion"), ECF No. 55. Def's Objs. Magistrate Shields' Order, ECF No. 62 ("Def's Objs."). For the reasons set forth below, ADP's objections are denied and Magistrate Judge Shields' Order is affirmed.

## PROCEDURAL HISTORY[1]

In the course of this Title VII case, the parties engaged in discovery on the issue of whether Macchia mitigated any damages resulting from the alleged discrimination and retaliation by looking for suitable paid employment after ADP terminated her employment. On or before June 27, 2023, ADP advised Macchia and the Court that it would not retain an expert to defend against Macchia's claims. Elec. Order, June 27, 2023. ADP did, however, retain a vendor, Forensic JobStats LLC ("FJS"), and directed it to search for ads for jobs for which Macchia could have applied following her termination. Def's Objs., Ex. 2 at 2–3. ADP directed FJS to search for postings between June 26, 2020 and some defined end date,[2] for available sales jobs, childcare work, freelance writing, and teaching jobs in Manhattan, Brooklyn, Queens, the Bronx, Staten Island, and Nassau and Suffolk Counties, and remote positions based on Macchia's deposition testimony that she had been looking for sales opportunities and "anything that could generate income" following her termination. Def's Objs. at 2; *id.*, Ex. 2 at 3. Along with these parameters, ADP allegedly provided FJS a list of "suggested keywords" to use in compiling a report on suitable jobs for which Macchia could have, but did not, apply. Def's Objs., Ex. 2 at 2. According to ADP, FJS compiled reports from the TalentNeuron website

---

[1] As a threshold matter, this Court has federal question jurisdiction over Plaintiff's Title VII claims pursuant to 18 U.S.C. § 1331 and supplemental jurisdiction over the remaining state law claims, all of which are part of the same case or controversy and arise out of the same common nucleus of operative facts, under 28 U.S.C. § 1367(a). Because ADP is alleged to do business in New York, Compl., ECF No. 1 at ¶¶ 15, 17–21, it thereby has minimum contacts with the state as required for personal jurisdiction. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013) ("[M]inimum contacts necessary to support [personal] jurisdiction exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there.") (internal citation and brackets omitted). Venue is proper under 28 U.S.C. § 1381(b) and 18 U.S.C. § 1965 because a substantial part of the events or omissions giving rise to this action occurred in this judicial district, where Macchia is alleged to have worked for ADP.

[2] The parties' briefing to this Court on Defendant's objection to the Order does not address the end date for the time period applied to FJS's search for ads for suitable jobs, and that end date is not material to this Court's ruling that Magistrate Judge Shields did not commit any clear error.

(www.talentneuron.com), "which maintains a database of over five billion global help-wanted ads "by scraping content from over 65,000 online sources," including "large job search websites as well as individual employer websites." *Id*. at 2–3. FJS compiled around 24,000 pages of documents, corresponding to around 34,800 job ads posted during the date range provided by ADP for jobs in sales, childcare, freelance writing, and teaching that were either remote or located in one of the aforementioned geographical areas (the "FJS Report"). *Id.*

On September 18, 2023, Macchia filed a Motion to Strike ADP's production of the FJS Report under Rule 26(a)(2)(A) on the basis that it constituted improperly disclosed expert discovery regarding whether Plaintiff failed to mitigate damages. Pl's Mot. Strike Expert Disc., ECF No. 55. Macchia also argued that even if properly disclosed as expert evidence, the report does not comply with Rule 26(a)(2)(B)(i-iv), which requires that a party's expert disclosure is "accompanied by a written report—prepared and signed by the witness" setting forth:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in this case.

*Id.* at 1–2. Macchia argued that ADP failed to justify its noncompliance with Rule 26(a)(2) and that the introduction of the FJS Report would harm her by requiring her to expend additional resources to meet this new testimony without time to plan in the face of ADP's "disorganized and noncompliant production." *Id.* at 3. Macchia also argued that ADP's failure to provide a written report precluded her from "discern[ing] the quality of" FJS's work or "the credibility or skill of the analyst." *Id.* ADP provided a letter response on September 26, 2023, arguing that Macchia provided insufficient evidence of her job search efforts, that FJS did not provide any

3

expert opinions, and that no expert is needed to opine on Macchia's inadequate job search and the availability of thousands of suitable jobs advertised on the internet. Def's Objs., Ex. 2.

On October 17, 2023, Magistrate Judge Shields heard the parties' arguments concerning the Motion and issued an order granting it. ECF No. 55. The Order found that ADP's production of the FJS Report is precluded because it constitutes expert discovery and ADP previously stated it did not intend to retain an expert as reflected in the Court's June 27, 2023 electronic order. After hearing from the parties on the Motion, Magistrate Judge Shields reasoned:

> All expert testimony is based on facts. You always ask the expert to look at and use their judgment to get factual information and then present it to a jury. And whoever this company is, they use their judgment in what to look for and they put these facts together. And now you want to put them forward at trial, maybe with the witness or without. But it's my ruling that what you're trying to do is expert testimony and you've already indicated there is no expert testimony in this case. So I'm finding this is improper expert testimony and it is barred in this case. So that's my ruling.

Elec. Order, Oct. 17, 2023.

ADP objected to the Order by letter. *See* Def's Objs. Macchia provided a letter response. Pl's Reply Opp'n Def's Objs., ECF No. 65. This Court reviewed the parties' correspondence on ADP's objections and held a conference on November 28, 2023, where both parties argued their positions. *See* Min. Entry, Nov. 28, 2023. At the conference, the Court asked the parties for supplemental briefing on legal authority supporting or calling into question the conclusion that FJS's compilation of job ads through a search of its own database was expert work involving the exercise of specialized knowledge, rather than the compilation of facts akin to the work product of an e-discovery vendor, as argued by ADP. *Id.* The Court asked the parties to identify any cases in which the compilation of job postings by a vendor was admitted or excluded as expert evidence, or admitted as fact evidence, in a Title VII case. *Id.* The parties each provided additional correspondence. *See* ECF Nos. 68, 69.

4

ADP raises before this Court the same arguments it made to Judge Shields before the ruling granting the Motion. ADP argues that the FJS Report constitutes fact evidence because FJS did not offer an expert opinion. *See* Def's Objs. at 2–3. ADP reports that it retained FJS to compile job ads to support its argument that Macchia failed to mitigate damages by using "reasonable diligence in finding other suitable employment." *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231 (1982); Def's Objs. at 1. According to ADP, the Order is clearly erroneous because FJS's compilation of job ads through a search of its database is based on internet sources and requires no specialized knowledge or expertise. *See* Def's Objs. at 2; ECF No. 69 at 2.

Macchia argues that the Order was not clearly erroneous or contrary to law because the FJS Report qualifies as expert discovery. According to Macchia, ADP failed to disclose FJS as an expert under Rule 26(a)(2)(A), Fed. R. Civ. P., and the FJS report does not comply with the enumerated requirements of an expert witness report under Rule 26(a)(2)(B)(i-iv), Fed. R. Civ. P. Macchia argues that, like an expert, "FJS must construct a process and procedure for verifying and culling the data from a variety of sources on the Internet, evaluate the quality of the posting, evaluate whether a posted job was actually available or simply advertised continuously and determine whether the job posts were mechanisms to drive traffic rather than true advertisements for open positions." ECF No. 68 at 1.

**STANDARD OF REVIEW**

A district court judge may set aside a magistrate judge's order "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). A finding is clearly erroneous if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States v. United Gypsum Co.*, 333 U.S. 364, 395 (1948)) (internal

5

quotation marks omitted). Pursuant to this highly deferential standard of review, a magistrate judge is "afforded broad discretion in resolving non-dispositive disputes." *Peralta v. Regent Catering, Inc.*, No. 17 Civ. 6993, 2022 WL 6799407, at *4 (E.D.N.Y. Mar. 18, 2022) (citations omitted). Additionally, new arguments and factual assertions may not be raised for the first time in an objection to a magistrate judge's discovery order. *See In re Keurig Green Mt. Single-Serve Coffee Antitrust Litig.*, 336 F.R.D. 400, 403-04 (S.D.N.Y. 2020). Accordingly, a party seeking to overturn or modify a discovery order bears a heavy burden.

## DISCUSSION

Upon review of the record and the applicable law, Magistrate Judge Shields' Order striking FJS's compilation of jobs ads was not clearly erroneous or contrary to law. The record shows that FJS applied specialized knowledge to facts in the process of compiling the tens of thousands of job ads that ADP wishes to put forth at trial as suitable jobs for which Macchia could have applied but did not. *See Green v. McAllister Bros.*, No. 02 CIV. 7588 (FM), 2005 WL 2207024, at *2 (S.D.N.Y. Sept. 7, 2005) (Under Federal Rule of Evidence 702 and Supreme Court precedent, the role of an expert is to "apply his knowledge reliably to the facts of the case."). ADP concedes that although it provided search terms to guide FJS's search for ads, the vendor applied those search terms to a database of job ads that FJS itself creates and maintains. *See* Def's Objs. at 2. As ADP notes in its description of FJS's work, FJS has chosen to search for job ads on www.talentneuron.com, "which maintains a database of over five billion global help-wanted advertisements by scraping content from over 65,000 online sources[,]" including "large job search websites as well as individual employer websites." Def's Objs., Ex. 2 at 2–3. FJS necessarily makes judgments about how to compile its internal database of job ads, including which online sources to scrape for data, which ads to retain in the database rather than reject, and

whether to eliminate any unreliable or irrelevant ads retrieved through a keyword search. While ADP claims that FJS does not apply specialized knowledge or expertise, *see id.* at 2, FJS's own website emphasizes the company's "specialized knowledge and experience" and how it retrieves "the most relevant employment ads" by compiling and searching its own "unique database of help wanted ads."[3] These descriptions belie ADP's repeated assertions that FJS simply identifies suitable job postings by searching the internet using search terms identified by ADP.

In response to the Court's Order for supplemental authority, ADP failed to identify a single case in which the work of FJS or a comparable vendor who compiled job ads through a search of its own database was admitted as fact evidence on the question of whether a Title VII plaintiff failed to mitigate damages. *See generally* ECF No. 69. By contrast, a compilation of around 11,500 job ads by FJS—similar to what FJS produced for ADP in this action—was rejected as part of expert evidence in mitigation discovery in *Speights v. Arsens Home Care Inc.*, No. 19 Civ. 2343, 2020 WL 6343263, at *6 (E.D. Pa. Oct. 29, 2020). In *Speights*, the plaintiff argued that the FJS job ad compilation was flawed because, among other things: (1) the compilation did "not take into account the length of time jobs were posted, pointing out that some were posted for just one day"; (2) "some of the job postings [were] unreliable," such as postings where the name of the entity posting the job was not listed; and (3) the compilation did not weed out jobs that required specialized experience, such as "optometric assistant." *Id*. The

---

[3] The front page of FJS's website states:

> FJS harnesses a unique database of help wanted ads for use in litigation. Using our specialized knowledge and experience, the most relevant employment ads can be pinpointed for use in a variety of legal matters.

Forensic JobStats Home Page, https://forensicjobstats.com (last visited Jan. 2, 2024).

court in *Speights* also noted concerns about the "reliability" of the "database" searched by FJS, including the lack of explanation for how the FJS database of job ads was created. *Id.*

The rejection of FJS's job ads compilation as expert evidence in *Speights* supports Magistrate Judge Shield's decision to strike the FJS Report in this case as undisclosed expert evidence unaccompanied by a timely written expert report meeting the requirements of Rule 26(a)(2)(B)(i-iv). Like in *Speights*, ADP produced the FJS Report with the intention of showing "jobs that Plaintiff could have applied for," which is an expert opinion—not fact evidence. Here, like in *Speights*, FJS compiled "suitable" job ads, necessarily making judgments about what internet sites to scrape for ads and which ads to reject as unreliable or inapplicable even though they were retrieved by searches using the criteria provided by ADP. The lack of timely disclosure of FJS's work product and any written report addressing the Rule 26(a)(2)(B)(i-iv) requirements—including a complete statement of all opinions and the basis for them, the facts or data relied on by FJS, FJS's qualifications, including past publications and a list of all other cases in which FJS testified as an expert at trial or by deposition—prejudices Macchia because discovery has closed and she did not have the opportunity to assess FJS's methodology, depose the FJS analyst who compiled the report, retain a rebuttal expert, and produce a timely rebuttal expert report. The FJS Report is expert work that should have been disclosed pursuant to Rule 26(a)(2)(A) and (B), but ADP elected not to take that approach as reflected in the Court's June 27, 2023 electronic order.

ADP relies on *Kochka v. W. Penn Allegheny Health Sys. Inc.*, No. 2:21-CV-01349-CCW, 2023 WL 7525378 (W.D. Pa. Nov. 14, 2023), to argue that FJS's methodology is reliable. In *Kochka*, an employment discrimination case, the court found that mitigation expert Chad Staller used a reliable methodology where he identified search terms based on the plaintiff's deposition

8

and then relied on FJS to search for ads for suitable jobs in the Gartner TalentNeuron database.[4] *Kochka*, 2023 WL 7525378 at *5. ADP asserts that because the court in *Kochka* found that Staller's use of job listings identified through FJS's search to be reliable, this Court should find that the Order was contrary to law and the FJS Report here was not an expert opinion warranting timely expert disclosures. ECF No. 69 at 2. But even *Kochka* undermines ADP's argument because, in that case, an expert presented an opinion comparable to the one that ADP seeks to introduce in this case through the FJS Report: that there were around 34,800 ads posted during the date range at issue for suitable jobs for which Macchia could have applied. *See Kochka*, 2023 WL 7525378 at *4–5.

ADP also relies on *Ramey v. Dist. 141, Int'l Assoc. of Machinists & Aerospace Workers*, No. 99-CV-4341 (BMC) (RML), 2010 U.S. Dist. LEXIS 94646, at *18 (E.D.N.Y. Sept. 8, 2010), which is distinguishable. *See* ECF No. 69 at 2. In *Ramey*, the court held that the defendants in that labor union breach of fiduciary duty case failed to offer any evidence at trial demonstrating that the plaintiff did not adequately mitigate damages, but could have offered expert evidence or "job postings from other airlines, if there were any, seeking to hire airline mechanics who were two or three years from retirement[]." *Id.* But *Ramey* did not opine on whether a defendant may rely on expert or fact evidence on mitigation when seeking to produce the analysis of an entity that applies its own "specialized knowledge and experience" to identify "the most relevant employment ads" by compiling and searching its own "unique database of help wanted ads[,]"[5] as is the situation here.

---

[4] The Court notes that the FJS Report here was developed through a search of the TalentNeuron database, which is presumed to be the same as or similar to the Gartner TalentNeuron database in *Kochka*, 2023 WL 7525378.

[5] Forensic JobStats Home Page, https://forensicjobstats.com (last visited Dec. 27, 2023).

9

Finally, ADP's insistence that Macchia would not be prejudiced by a reversal of Judge Shields' Order because Macchia could simply conduct an untimely deposition of the FJS analyst who compiled the FJS Report, ECF No. 69 at 2, entirely ignores the fact that discovery has closed and demonstrates a disrespect for the magistrate judge's discretion to manage the discovery process and ensure that the case moves toward an efficient and just resolution. *See Schwartz v. Metro. Prop. & Cas. Ins. Co.*, 393 F. Supp. 2d 179, 181 (E.D.N.Y. 2005) ("[M]agistrates are afforded broad discretion in resolving discovery disputes and reversal is appropriate only if their discretion is abused.") (internal quotation marks and citations omitted); *Moss v. Enlarged City Sch. Dist. Amsterdam*, 166 F. Supp. 2d 668, 670 (N.D.N.Y. 2001) (same).

## CONCLUSION

For the reasons set forth above, this Court denies ADP's request to set aside Magistrate Judge Anne Shields' Order granting Macchia's Motion to Strike Defendant's Expert Discovery Production, ECF No. 55.

Dated: Central Islip, New York

January 9, 2024

_____/s Nusrat J. Choudhury_____
NUSRAT J. CHOUDHURY
United States District Judge